IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DONALD RAY CUNNINGHAM                                                           PLAINTIFF

         v.         Civil No. 04-5298

OFFICER KERN, an officer of the Washington
County Sheriff's Office/Detention Center;
LEE OWEN, Sheriff, Washington County
Sheriff's Department; OFFICER STRAIN,
an officer of the Washington County Sheriff's
Office/Detention Center; RHONDA BRADLEY,
Nurse at the Washington County Detention Center;
and SGT. REESER, investigating officer.                                          DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Donald Ray Cunningham brings this pro se civil rights action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was detained in the Washington County Detention Center.

On October 28, 2005, defendants filed a motion (Doc. 21) for summary judgment. The court entered an order (Doc. 24) directing plaintiff to respond to the summary judgment motion. On December 30, 2005, the plaintiff filed his response to the motion. (Doc. 25.) The defendants' motion for summary judgment is currently before the undersigned for issuance of this report and recommendation.

### I. Background

When plaintiff was booked into the Crawford County, Kansas, Detention Center on July 20, 2004, he completed an intake medical questionnaire. On this questionnaire, plaintiff stated that he has seizures, but that he was not taking any medication for this condition. (Doc. 22 at Ex.

1.) On that same day, plaintiff was taken to the Mt. Carmel Regional Medical Center where he was diagnosed with headaches and possible seizures. Dr. Augusto Ramirez evaluated the plaintiff. Dr. Ramirez noted that plaintiff had been brought in on the claim that he had had a seizure, but that no one had witnessed the seizure. A CT scan was conducted which was negative. Several laboratory tests were conducted which were also normal. After a first attempt to conduct a lumbar puncture was unsuccessful, Cunningham refused a second attempt. Cunningham decided to return to the jail against medical advice. (Doc. 22 at Ex. 1.)

The next morning, Cunningham told a jailer that he had had another episode of seizure which was not witnessed. Cunningham was again taken to Mr. Carmel. There, Dr. Ramirez informed him that there was no clinical evidence of a serious central nervous system problem. When Cunningham asked what was left that could be causing the problem, Dr. Ramirez told him that they would have to observe him. Cunningham then "got kind of aggressive." Dr. Ramirez opined that plaintiff needed confinement and a neurological consultation if his seizures were witnessed, but Dr. Ramirez thought "that this is more a behavioral problem than a neurological problem." At that time, Cunningham was given a prescription for Imileptol for two weeks. (Doc. 22 at Ex. 1.) On August 26, 2004, Cunningham was again booked into the Crawford County, Kansas jail. On his medical intake, he indicated only that he had headaches and blackouts--not seizures. (Doc. 22 at Ex. 1.)

On October 1, 2004, Cunningham was arrested by the Fayetteville Police Department and transported to the Washington County Detention Center on failure to appear charges and on a hold for another department. (Doc. 25 at ¶ 8.) Upon intake, he signed a medical release and consent for medical services. (Doc. 25 at ¶¶ 9, 10.)

According to Cunningham's medical records maintained by the Washington County Detention Center, Nurse Bradley attempted to obtain Cunningham's medical records from the Mt. Carmel Hospital on October 1, 2004. Also, on October 1, 2004, Nurse Baker contacted the Wal-Mart pharmacy in Pittsburg, Kansas because this was the pharmacy through which plaintiff stated that he had received Dilantin medication for his seizures. That pharmacy reported that they did not have any record information for Cunningham. Cunningham also reported that he had taken Dilantin that morning, but when test results came back that contradicting that claim, plaintiff reported that he did not know what medication he was taking. (Doc. 22 at Ex. 3.)

Later on October 1, 2004, it was reported that an inmate had fallen. When Nurse Baker arrived, plaintiff had a cut over his right eye. His vitals were taken, and he was removed to the nurses' station. There, Nurse Baker reported that Cunningham was "hostile, cussing, and non-cooperative." Cunningham complained about pain on the left side of his rib cage, but there was no redness or abrasions seen. Cunningham then reported that he had been seen by emergency medical service (EMS) when he was first arrested on his claims of seizures, but that he had refused to go the emergency room, but now he was threatening to sue if he was not taken to the emergency room. The cut over his right eye was glued and he was transported to the emergency room by officers Lansford, Jason and Reeser. (Doc. 22 at Ex. 3.) Plaintiff states that he does not recall going to the hospital. (Doc. 25 at ¶ 16.)

Although plaintiff states that he does not believe he was ever taken to the Washington Regional Medical Center, the defendants have provided a copy of plaintiff's discharge instructions, dated October 1, 2004, reflecting that he was being discharged and prescribed 15 Ativan tablets to be taken three times a day. (Doc. 22 at Ex. 2.) On October 1, 2004, Nurse

AO72A
(Rev. 8/82)

Rhonda Bradley ordered 15 Ativan tablets for plaintiff. These tablets were to be taken three times a day. (Doc. 22 at Ex. 2.) Cunningham refused to sign the inmate medical insurance form, which states that he would be responsible for the cost of medical treatment. (Doc. 22 at Ex. 2.)

On October 6, 2004, Cunningham was seen by Dr. Howard who noted that Cunningham claimed to have had a seizure on October 4. Dr. Howard noted that plaintiff was not currently taking medications, and placed him on Dilantin to see how he would do. Cunningham also complained of headaches and was prescribed Aleve to be taken twice daily. (Doc. 22 at Ex. 3.)

On October 11, 2004 at 12:21 a.m., Deputy Jason Stanley filed a report, stating that at approximately 11:28 p.m., he observed Cunningham fall while stepping out of the shower room. Deputy Stanley observed Cunningham hit his head and begin to shake violently. At 11:45 p.m., Deputy Parker contacted Nurse Baker by phone. Nurse Baker instructed Deputy Parker that if jail officials could get the bleeding to stop, Cunningham could be taken to the clinic the next day. EMS personnel were contacted, and they moved Cunningham to the nurses' station where EMS personnel treated a laceration to Cunningham's head. Cunningham was then moved to Cell 238 where a 15-minute watch was continued. (Doc. 22 at Ex. 4.) Cunningham disagree with this account of facts only in that he was already in Cell 238 and was not moved to there for observation. (Doc. 25 at 22.)

On October 11, 2004, Deputy Bruce Strain filed a report, stating that at 12:30 a.m. he heard loud banging coming from Cell 238. There Deputy Strain found detainee Robert Chavez beating on the door and screaming that Cunningham was having a seizure. Deputy Strain reported that Cunningham was laying face down on his mat and moaning and did not seem to be having any type of seizure. Deputy Strain left the lights on in cell 238 so Cunningham could

AO72A
(Rev. 8/82)

be monitored. (Doc. 22 at Ex. 4.) Cunningham disagrees with this account only on the basis that he does not believe Deputy Strain was working at the Washington County Detention Center in October 2004. (Doc. 25 at ¶ 19.)

According to a Washington County Detention Center Medical Transport Sheet, Cunningham was taken to a Medi-Serve clinic on October 11, 2004 where he received stitches for the laceration above his right eye brow. Per the doctor's orders, the stitches were to be removed on October 18, 2004. (Doc. 22 at Ex. 4.) Cunningham disagrees with this, claiming that it was days later before he was taken to a doctor or hospital. (Doc. 25 at ¶ 23.)

On October 11, 2004, Officer Nancy Luther reported that Cunningham received an answered request concerning his charges and bond amount and supposedly had a seizure when he received this response. Officer Luther told Cunningham that he had gone to the hospital the day before, but that she would call the nurse for ibuprofen for his back that was hurt in the fall. Nurse Bradley approved ibuprofen to be taken daily as needed. Officer Luther further reported that a doctor at the Washington Regional Medical Center had discreetly told Sgt. Reeser that Cunningham was faking his seizures. (Doc. 22 at Ex. 4, Doc. 25 at ¶¶ 20-21.) On October 13, 2004, Cunningham was treated by Dr. Howard for continued seizure problems and headaches. (Doc. 22 at Ex. 3.)

On November 20, 2004, at approximately 4:15 p.m., Deputy Kern was assisting Deputy Waggoner in escorting a detainee from the cell block to the shower room. As they passed by Cunningham's door, Deputy Kern noticed that the small door covering the window in the large door was open and that Cunningham had his face in the window trying to watch what the deputies were doing. As they passed by the door, Deputy Kern reached up and pushed the small

window door shut. After Deputy Kern closed the door, Cunningham began yelling profanities toward Deputy Waggoner, saying "Waggoner, you asshole, you hit me in the head with the door!" A few minutes later, Cunningham was still yelling at Deputies Waggoner and Kern. Deputy Waggoner opened the door to Cell 272 to see what Cunningham was yelling about, and at that time there did not appear to Deputy Waggoner or Kern to be anything wrong with Cunningham. Approximately 15 minutes later, Cunningham began yelling at every officer who walked by his cell, stating that he wanted to speak to the sergeant. Deputy Halley took Cunningham to the sergeant's office to discuss his complaints with Sgt. Calvin Mitchell and Sgt. Chris Reeser. (Doc. 22 at Ex. 4; Doc. 25 at ¶¶ 26-29.) Cunningham only disagrees with this account of events in that Deputy Kern "slamed" [sic] the window door instead of just shutting the door. (Doc. 25 at ¶ 26.)

During Cunningham's time at the Washington County Detention Center, there was a policy that the windows on the cell block doors were to remain closed at all time for the safety and security of the detention center, for the privacy of showering inmates, and for the maintenance of order in the intake process. Detainees at the detention center often attempted to pry open the windows on the cell block doors and deputies were constantly shutting those windows. (Doc. 22 at Ex. 6.)

On November 21, 2004, Cunningham filed a medical request to see the jail nurse about his headache. (Doc. 22 at Ex. 5.) The next day, November 22, 2004, Cunningham saw Nurse Bradley, who noted that Cunningham was hit in the head by a door on Saturday, but that there was no bruising. She stated that he was on Aleve and would continue monitoring him.

Cunningham contends that the nurse refused to give him any medication for his headache. (Doc. 22 at Ex. 6, Doc. 25 at ¶ 30.)

On November 22, 2004, Cunningham again complained of a headache, and Nurse Bradley responded that he was receiving Aleve twice daily. She also noted that Cunningham told an officer that he had a seizure, but that no one had examined him. Cunningham's Dilantin levels were drawn per Dr. Howard's orders and Cunningham was permitted to have Ibuprofen. (Doc. 22 at Ex. 5.) Cunningham claims that Nurse Bradley would not provide him anything for his headaches. (Doc. 25 at ¶ 31.) The defendants have submitted plaintiff's medication logs which reflect that he received Aleve from November 10 through December 1, 2004, twice a day per his request, and was offered Ibuprofen at least twice a day every day of December, although Cunningham often refused the Ibuprofen. (Doc. 22 at Ex. 3.)

On November 23, 2004, Cunningham's Dilantin level was checked by the Washington Regional Medical Center, and those results were forwarded to the jail on November 24, 2004. (Doc. 22 at Ex. 5.)

On November 28, 2004, Cunningham submitted a grievance about the November 20 incident, claiming that it had caused a knot on his head. Officer Matthews responded that Sgt. Reeser was investigating the incident. (Doc. 22 at Ex. 5.) On November 27, 2004, Cunningham complained about seeing black spots and that he had blacked out twice and was having severe headaches. Nurse Bradley responded that Cunningham was on the list to see the doctor. On December 1, 2004, Dr. Howard examined Cunningham for headaches and dizzy spells. Dr. Howard prescribed Meclizine and Ibuprofen. On December 13, 2004, Cunningham requested to be back on the medication because it really helped, and on December 15, 2004, Dr. Howard

-7-

verbally ordered that Cunningham continue to receive the Meclizine. (Doc. 22 at Ex. 5.) Defendants have provided Cunningham's medication logs which show that he received Meclizine three times a day from December 1 through December 9, 2004, and from December 16 through January 10, 2004. (Doc. 22 at Ex. 3.)

Cunningham was released on probation from the Washington County Detention Center on January 11, 2005. (Doc. 22 at Ex. 2.)

Defendants contend that they are being sued in their official capacities only. (Doc. 21.) Plaintiff indicates that he is without knowledge as to the capacity in which he is suing defendants. (Doc. 25 at ¶ 58.) Also, defendants contend that Cunningham is attempting to hold Sheriff Owen liable for the allegations in this complaint because of Sheriff Owen's role as a supervisor. (Doc. 21.) Again, Cunningham states that he is without knowledge as to why he believes Sheriff Owen is liable. (Doc. 25 at ¶ 59.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

AO72A
(Rev. 8/82)

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

The plaintiff raises three claims in this action: (1) that Deputy Kern used excessive force in closing the window door to Cunningham's cell which hit Cunningham on his forehead, (2) that defendants were deliberately indifferent to his seizure condition, and (3) that defendants were deliberately indifferent in seeking medical care for Cunningham after he was hit by the door.

**Excessive Force**

Excessive force claims brought by a pretrial detainee, although grounded in the Fifth and Fourteenth Amendments, are analyzed under an objective reasonableness standard. *See Graham*

*v. Conner*, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Due process requires that a pretrial detainee, such as the plaintiff in this case, not be punished. *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (due process requires that a pretrial detainee not be punished; the Eighth Amendment requires that the punishment imposed not be cruel and unusual). Thus, excessive force claims are analyzed under the reasonable objectiveness standard instead of the standard used in Eighth Amendment cases.

The injuries received by a pretrial detainee "must be necessarily incident to administrative interests in safety, security, and efficiency. Constitutionally inform practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose, or those that are rationally related but are excessive in light of their purpose." *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (*citing Bell*, 441 U.S. at 539 n.20.)

The alleged force used here--slamming closed the door that covers the window opening in the plaintiff's cell door--simply does not amount to the type of force that could constitute a constitutional violation. Defendants showed that it was the policy of the detention center that the window doors were to remain closed for the safety and security of the facility. Additionally, it was common practice for detainees to pry their doors open in violation of this policy, requiring jailers to frequently close these doors. Also, the injury that plaintiff claims to have suffered--a knot on his head and headaches--is de minimis. The de minimis nature of plaintiff's injuries does not support plaintiff's claims that he was subjected to excessive force which amounts to punishment. *See Bell*, 441 U.S. at 535, *Johnson v. Glick*, 481 F.2d 1028, 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a

AO72A
(Rev. 8/82)

prisoner's constitutional rights.") Therefore, defendants are entitled to summary judgment on plaintiff's claim that he was subjected to excessive force that violated his constitutional rights.

**Deliberate Indifference**

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) (analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Regarding the treatment plaintiff received for his seizure condition, he was taken to the hospital upon intake, the nurses attempted repeatedly to obtain plaintiff's medical records, plaintiff was examined by Dr. Howard on several occasions, and plaintiff received both Dilantin and Meclizine for his seizures and dizziness, as well as over-the-counter pain medications for

AO72A
(Rev. 8/82)

headaches. This extensive treatment for plaintiff's condition does not constitute deliberate indifference, rather it shows that plaintiff received substantial medical treatment while detained at the Washington County Detention Center.

Plaintiff also claims that defendants were deliberately indifferent to his serious medical needs after he was hit in the forehead by window door being closed on him. This incident occurred on a Saturday, plaintiff submitted a medical request on Sunday claiming headaches, and on Monday he was examined by Nurse Bradley on Monday. At that time, Nurse Bradley noted that there did not appear to be any bruising on plaintiff's forehead. Despite the lack of evidence of injury, Nurse Bradley prescribed Aleve to be taken twice a day, and records show that plaintiff did received this medication as prescribed.

Plaintiff's claim fails here, first because, as noted above, the injury was de minimis and thus not objectively serious. Second, plaintiff did receive medical care in the form of an examination by Nurse Bradley and the administration of over-the-counter pain medications for the headache. Defendants are entitled to summary judgment on this claim.

**Official Capacity Claims**

The claims against the defendants in their official capacities are equivalent to claims against Washington County. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Washington County may only be held liable for a constitutional deprivation if the deprivation is the result of a policy or custom of the county. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). An official policy involves a deliberate choice by an official who has the authority to establish governmental policy to follow

a specific course of action made from various alternatives. *See Ware v. Jackson County, MO*, 150 F.3d 873, 880 (8th Cir. 1998). As the plaintiff has failed to sustain an underlying substantive claim under which his constitutional rights were violated, municipal liability does not attach. *See McCoy v. City of Monticello*, 441 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim").

**Respondeat Superior Claim**

Cunningham also fails to support a claim against Sheriff Owen on the doctrine of respondeat superior. Cunningham does not allege that Sheriff Owen was personally involved in any of the actions or decisions forming the factual basis of his claim, nor does Cunningham allege that Sheriff Owen was personally aware of the facts forming the basis of his complaint allegations. Without proof of actual knowledge or involvement, Sheriff Owen cannot be held liable in this claim. *See Boyd v. Knox*, 47 F.3d 966, 968-69 (8th Cir. 1995) (no respondeat superior liability under § 1983; supervisor is liable where he is personally involved in violation, i.e., where he knows about conduct and facilitates it, condones it, or turns blind eye).

### IV. Conclusion

I recommend that defendants' motion (Doc. 21) for summary judgment be granted.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties**

AO72A
(Rev. 8/82)

**are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of June 2006.

                                              **/s/ Beverly Stites Jones**
                                   _____
                                   HON. BEVERLY STITES JONES
                                   UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)